IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DR. JEANNIE BLOM,

     Plaintiff,

v.

WELLSTAR HEALTH SYSTEM,
INC., and DR. RICHARD HART,

     Defendants.

Civil Action File No.
1:10-CV-0773-JOF

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff, Dr. Jeannie Blom ("Plaintiff") by and through

counsel, and pursuant to Fed.R.Civ.Pr. 15(b), hereby files this First Amended

Complaint against Wellstar Health System, Inc. ("Defendant Wellstar") alleging

violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§

2000e *et seq.*, the Family Medical Leave Act (FMLA), 29 U.S.C.A. § 2601, *et seq.*,

negligent retention against Defendant Wellstar, and tortious interference with

employment against Dr. Richard Hart (Defendant Hart) (collectively

"Defendants") and shows this Court the following:

## INTRODUCTION

### 1.

This is an action for money damages, equitable relief and declaratory relief brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the Family Medical Leave Act (FMLA), 29 U.S.C.A. § 2601, *et seq.* and Georgia State Law.

### 2.

Plaintiff was employed by Defendant Wellstar from approximately June, 2000 to June, 2008.  While employed by Defendant Wellstar, Plaintiff endured a sexually discriminatory work environment where she was constantly treated differently on account of her gender, and where she was retaliated against when she engaged in protected activity by opposing such treatment.

### 3.

Plaintiff consistently complained about the discriminatory treatment she experienced while employed by Defendant Wellstar.  Plaintiff was subsequently terminated in violation of Title VII and the FMLA and in retaliation for exercising her rights under those statutes.  Plaintiff seeks injunctive and declaratory relief, back pay and compensatory, punitive and liquidated damages to remedy these civil

rights violations, as well as attorneys' fees and costs and any other available remedies under the law.

4.

In addition, Defendant Hart intentionally interfered with Plaintiff's employment relationship with Defendant Wellstar by, *inter alia*, causing her to suffer adverse actions as related to her employment with Defendant Wellstar, including, but not limited to, termination, when she would not acquiesce to his desire to engage in a sexual relationship.

## JURISDICTION AND VENUE

5.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, 29 U.S.C. § 215, and 28 U.S.C. §§ 2201 and 2202.

6.

Venue is proper pursuant to 28 U.S.C. § 1391 in that the unlawful employment practices and the violations of Plaintiff's rights alleged below were committed in this judicial district.

7.

Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") timely charges of discrimination and retaliation against Defendant Wellstar.  Plaintiff received a notice of her right to sue from the EEOC within the last 90 days and has complied with all other conditions precedent to the institution of this lawsuit.

**PARTIES**

8.

Plaintiff Dr. Jeannie Blom  is a female resident and citizen of the United States and the State of Georgia. She submits herself to the jurisdiction of this Court.

9.

Defendant Wellstar Health System, Inc., ("Defendant Wellstar") is a Georgia nonprofit corporation and maintains its principal office at 805 Sandy Plains Road, Marietta GA 30066.  At all times relevant to this action, Defendant Wellstar was Plaintiff's employer within the meaning of Title VII.  It may be served by delivering process to Bonnie Wilson, Defendant Wellstar's agent for service of process.

10.

Defendant Hart is a male and resident and citizen of the United States and the State of Georgia.  He may be served with process at his residence 445 Cullingworth Drive, Alpharetta, Georgia 30022.

11.

Defendant Wellstar is an employer as that term is defined for purposes of coverage under the FMLA, 29 U.S.C.A. § 2601, *et seq*.

12.

Defendant Wellstar is an employer as that term is defined for purposes of coverage of Title VII of the Civil Rights Act of 1964.

## STATEMENT OF FACTS

13.

Plaintiff is a female and was a member of Defendant Wellstar's Physician Group from approximately June, 2000 to March, 2008.  Plaintiff entered into an Employment Agreement with Defendant Wellstar and held the title of Rehabilitation Unit Medical Director at Defendant Wellstar's Cobb Hospital. Plaintiff cared for all patients on a 20 bed rehabilitation unit, a division of Cobb's 330 bed hospital and worked in excess of 1250 hours per year, making her FMLA eligible.

14.

Plaintiff had hospital privileges at Wellstar Cobb, Wellstar Douglas,

Wellstar Paulding Hospitals and other hospitals owned by Defendant Wellstar.

15.

Plaintiff is double Board Certified to practice in the area of Rehabilitation

Medicine.  She has impeccable credentials, was well-qualified for her position with

Wellstar and is well-respected for her skills in Rehabilitation Medicine.  Plaintiff is

a highly regarded Medical Consumer Advocate who has dedicated her life to

advocating for the handicapped.

16.

While employed by Defendant Wellstar, Plaintiff worked tirelessly and was

on call 7 days a week, 365 days a year, for 8 years. Plaintiff achieved

unprecedented results and for 8 years consistently maintained a full rehabilitation

census.

17.

Plaintiff's patient satisfaction scores were consistently close to 100%.  The

Plaintiff's last coding audit was 96%.  Defendant Wellstar was totally responsible

for all billing activities related to Plaintiff's provision of medical care in the

rehabilitation unit.  There were no billing issues for which Plaintiff was responsible.

18.

Rehabilitation units are among the most regulated areas of medicine, and they are frequently audited by Federal agencies for compliance. Not only did Plaintiff experience no problems related to federal compliance, she even won continuous CARF Accreditation for eight years with Stroke Specialist Certification for the Cobb Wellstar Rehabilitation Unit.

19.

Plaintiff received outstanding satisfaction ratings from patients and referring physicians. Her practice was one hundred percent dependent upon physician referrals, and because of her high satisfaction ratings from referring physicians, she garnered significant patient referrals.  The numerous referrals, of course, translated to significant revenues for Defendant Wellstar.

20.

Out of hundreds of Wellstar physicians, Plaintiff was the only woman to appear in the Wellstar Top 5 performers list for 5 years from 2003 until 2008.

21.

In 2007, Plaintiff was the first woman to reach the number one physician performer position in all of Wellstar.

22.

As stated above, Plaintiff's record of achievement was outstanding. She never received a negative performance review from Defendant Wellstar, and her last patient satisfaction survey even contained quotes from patients stating "We love Dr. Blom," "Dr. Blom is a blessing" and "Dr. Blom has the bedside manner of a Saint."

23.

During early 2008, Plaintiff's father was seriously ill with an FMLA qualifying illness, her disabled mother was recovering from recent hospitalization, also an FMLA qualifying illness, and her dependent special needs sister was in need of care, also an FMLA qualifying impairment. Plaintiff needed to take time off from work to help care for her family.

24.

Despite Plaintiff demonstrating her need for taking this FMLA qualifying leave, Defendant Wellstar would not allow it unless she found her own replacement to work during her absence.

25.

Not only did Defendant Wellstar refuse to provide coverage during Plaintiff's FMLA qualifying absences, it created intentional and unnecessary obstacles in order to impair Plaintiff's ability to assist in obtaining coverage.

26.

Defendant Wellstar applied conflicting and contradictory requirements and rules to Plaintiff, not applied to others, including but not limited to, not allowing non-Wellstar employed physicians to cover for her in the way other similarly situated Wellstar physicians had been previously allowed to.

27.

As the Plaintiff attempted to care for her father at the Cleveland Clinic on February 4, 2008, Defendant Wellstar's representatives called Plaintiff one hour before her father's surgery to demand that she do unnecessary work, which interfered with her right to take FMLA leave.

28.

Representatives for Defendant Wellstar made repeated and inappropriate work-related telephone calls to Plaintiff, threatening her as she remained at the Cleveland Clinic with her father. This included being told by administration that if

the demanded work was not done immediately, it would be used against her by

Defendant Wellstar.

29.

Prior to leaving for the Cleveland Clinic, Defendant Wellstar asked Plaintiff

to make sure there would be no admissions to the rehabilitation unit while she was

gone, so that team staff members could work on learning the new computer

training, among other reasons.

30.

After Plaintiff arranged for no admissions while she was on FMLA

qualifying leave, Defendant Wellstar contacted her, insisting that she suddenly

admit a patient to the rehabilitation unit.

31.

As a result, Plaintiff was forced to work and make multiple calls to assess

the situation while trying to care for her father. As always, Plaintiff did all the

work necessary to ensure the patient would get appropriate care. Ultimately,

Plaintiff determined that the patient did not even meet federal Medicare criteria for

admission to the rehabilitation unit and had a diagnosis that was well known to

administration not to qualify for inpatient rehabilitation.

752036.1

32.

When Plaintiff asked why her leave was being inappropriately interrupted and complained of disparate treatment, she was told by a Wellstar Administrator that her taking time off was causing too many problems, and that Plaintiff's contract was in jeopardy. Plaintiff was also told that things could be made even harder for her if she did not do as instructed.

33.

When Plaintiff returned from FMLA qualifying leave, she was next told Defendant Wellstar was refusing to pay the physician who provided coverage to Plaintiff's patients while she was on FMLA qualifying leave.

34.

Defendant Wellstar delayed payment to the covering physician for months, which required additional work by Plaintiff. The covering physician was fully qualified to provide the required care and is still allowed to provide coverage for other Wellstar rehabilitation physicians to this day.

35.

Plaintiff's FMLA leave was improperly shortened and frequently interrupted when she was at the Cleveland Clinic caring for her father.  Plaintiff was often required to attend to her father's medical needs and in the same day fly back to

752036.1

Georgia to see patients because of Defendant Wellstar's refusal to provide
adequate coverage.

36.

Plaintiff also had to work late at night on many occasions in order to handle
her work responsibilities and her care-giving responsibilities for her father and
family, as a result of Defendant Wellstar's failure to cooperate with her need for
FMLA qualifying leave.

37.

Even though the reason Plaintiff saw patients late at night during this time
period was due to Defendant Wellstar's refusal to cooperate with her taking FMLA
qualifying leave, she was criticized unfairly for seeing patients in the hospital late
at night.

38.

Defendant Wellstar's above-detailed actions interfered with Plaintiff's
ability to take FMLA qualifying time off from work to care for her family.

39.

While at the Cleveland Clinic, Plaintiff complained of interference with her
FMLA rights. Plaintiff informed Defendant Wellstar's administrators, who

improperly interfered with her leave, that she would be reporting them to higher level administrators.

40.

After reporting these violations, Plaintiff was notified to set up a meeting with administration.  Plaintiff was told this meeting was to assist her with coverage.

41.

Plaintiff appeared for a meeting on February 8, 2008, at which time she was told that the Defendant Wellstar's "Top 5" physician performers list had just become available to administration, and that she had become the first woman to reach the number one position.

42.

Plaintiff was told that her job was "too easy," that she did not belong at the top, and that others in Defendant Wellstar's management had a problem with her status as the top performing physician in the organization.  The "problem" Defendant Wellstar's management had with Plaintiff being the number one earning physician was due to her gender.  Plaintiff complained to Defendant Wellstar regarding the disparate and discriminatory treatment she experienced on account of her gender.

752036.1

43.

Rather than addressing the discriminatory issues and assisting Plaintiff with finding coverage so she could care for her family, Plaintiff was again put on call twenty four hours per day, seven days per week, without any relief.  This created unnecessary stress for Plaintiff, just as she was attempting to care for her family in need, and further interfered with her FMLA rights.

44.

Shortly after Plaintiff complained of discriminatory treatment in early 2008, Defendant Wellstar conducted a six week investigation of Plaintiff based on an alleged "anonymous call" to Wellstar's Compliance hotline.

45.

Plaintiff fully cooperated with Defendant Wellstar in this investigation and provided all information that was requested.  At the conclusion of the investigation, Plaintiff was told the allegations were baseless.

46.

This investigation was only one of the times Plaintiff was unfairly and discriminatorily singled out for investigation by Defendant Wellstar.  Similarly situated male physicians were not singled out for investigation by Defendant Wellstar.

47.

On or about March 17, 2008, Plaintiff again complained to Defendant's administration regarding the allegations that had been made against her and asked that Defendant investigate the perpetrator of this incident.  To Plaintiff's knowledge, nothing was done to investigate the perpetrator.

48.

Defendant Hart was employed as Defendant Wellstar's Systemwide Physicians Group Medical Director, was a member of Defendant Wellstar's senior leadership and was one of Plaintiff's supervisors who had, *inter alia*, authority to control the billing and collections portions of Plaintiff's practice.

49.

Defendant Hart also supervised Defendant Wellstar's self-insured employee health benefit plan, and had the authority to authorize or decline payments for Plaintiff's personal medical treatment.

50.

In early 2008, and prior to Plaintiff's termination, Defendant Hart expressed

to Plaintiff that certain high level Wellstar representatives wanted to terminate her,

and only he could provide the protection she needed.  He offered to protect her in

exchange for sex.

51.

Plaintiff did not acquiesce to Defendant Hart's overtures.  Defendant Hart's

overtures were unwelcome, offensive and intimidating to Plaintiff, who refused

and rebuffed these overtures.  Although Defendant Hart allegedly did not have the

authority to terminate Plaintiff, upon information and belief, Defendant Hart

encouraged and contributed to Defendant Wellstar's improper decision to

terminate Plaintiff.  Upon information and belief, Defendant Hart had previously

interfered with Plaintiff's employment relationship with Defendant Wellstar.

52.

On March 19, 2008, Plaintiff was called in and told that her employment

contract was being terminated "without cause."  However, Defendant had just

weeks earlier offered Plaintiff a new employment contract.  The "without cause"

explanation for Plaintiff's termination was pretext for Defendant Wellstar's true

discriminatory and retaliatory motives for Plaintiff's termination.  Per the

Employment Agreement with Defendant Wellstar, Plaintiff remained an employee for three (3) months following her termination.

53.

Plaintiff was replaced by a younger male physician.

54.

Plaintiff challenged the legitimacy of her termination and was overtly threatened with retaliation by Defendant Wellstar.  Specifically, one of Defendant Wellstar's representatives stated that if Plaintiff reported this and other discriminatory actions to the EEOC, "she would be very sorry" and "would see what she would get if she reported it."

55.

On or about July 31, 2008, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).

56.

Defendant Wellstar subsequently threatened to change its reason for termination from "without cause," to improper billing procedures.  Plaintiff, however, had previously been cleared of any alleged wrongdoing with respect to billing procedures.  In fact, prior to termination, Plaintiff had never been disciplined for improper billing procedures or anything else.  The "billing

procedures" explanation for Plaintiff's termination was pretext for Defendant

Wellstar's true discriminatory and retaliatory motives for Plaintiff's termination.

57.

Defendant Wellstar later changed its story once again, this time stating that

Plaintiff had been terminated for "poor job performance." However, Plaintiff

always received exemplary performance reviews.  The "poor job performance"

explanation was pretext for Defendant Wellstar's true discriminatory and

retaliatory motives for Plaintiff's termination.

58.

Upon information and belief, similarly situated male physicians were not

accused of billing improprieties when they engaged in the same or similar conduct.

Upon information and belief, similarly situated male physicians did not suffer

similar discipline and/or adverse employment actions when they engaged in the

same or similar conduct.

59.

Plaintiff continued to experience retaliation from Wellstar even after her

termination.  Plaintiff amended her previously filed EEOC charge based on the

continued retaliation.

752036.1

## COUNT I – DEFENDANT WELLSTAR
## GENDER DISCRIMINATION IN VIOLATION OF
## TITLE VII 42 U.S.C. §2000 *et seq.*

60.

Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 59 of the Complaint as if fully set forth herein.

61.

Defendant Wellstar's adverse employment decisions regarding Plaintiff were based on her gender in violation of 42 U.S.C. §2000 *et seq*.

62.

Plaintiff is entitled to the relief set forth in the prayer for relief below.

## COUNT II – DEFENDANT WELLSTAR

## RETALIATION IN VIOLATION OF TITLE VII 42 U.S.C. §2000 *et seq.*

63.

Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 62 of the Complaint as if fully set forth herein.

64.

As detailed above, Defendant Wellstar retaliated against Plaintiff for engaging in protected activities in violation of Title VII, 42 U.S.C. §2000e *et seq.*

752036.1

65.

Plaintiff is entitled to the relief set forth in the prayer below.

## COUNT III – DEFENDANT WELLSTAR

## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT, 29 U.S.C. §2615(b)

66.

Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 65 of the Complaint as if fully set forth herein.

67.

Defendant Wellstar's actions as set forth in the above paragraphs interfered with her right to take FMLA leave, and were taken, in part, in retaliation for Plaintiff requesting FMLA qualifying leave.

68.

Defendant Wellstar's actions were willful and committed with reckless disregard for Plaintiff's rights under the FMLA, thus, entitling her to liquidated damages in addition to her monetary losses.

## COUNT IV – DEFENDANT WELLSTAR

## RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT, 29 U.S.C. §2615(b)

### 69.

Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 68 of the Complaint as if fully set forth herein.

### 70.

Plaintiff's having engaged in protected activity pursuant to the Family Medical Leave Act, 29 U.S.C. §2611 *et seq.* was a motivating factor for her termination and other adverse employment actions suffered while she was employed by Defendant Wellstar.

### 71.

As a result of Defendant's retaliation, Plaintiff has suffered economic losses for which she should be compensated.

### 72.

Plaintiff is entitled to the relief set forth in the prayer for relief below.

## COUNT V - DEFENDANT HART
## TORTIOUS INTERFERENCE WITH EMPLOYMENT
## IN VIOLATION OF GEORGIA LAW

### 73.

Plaintiff incorporates herein by reference the allegations set forth in

paragraphs 1 through 72 of the Complaint as if fully set forth herein.

### 74.

Defendant Hart intentionally interfered with Plaintiff's employment when

she refused to acquiesce to his efforts to engage in a sexual relationship with him.

### 75.

Defendant Hart's tortious interference with Plaintiff's employment

relationship contributed to the injuries complained of in the instant matter.

### 76.

Defendant Hart's wrongful conduct shows willful misconduct, malice, fraud,

wantonness, oppression, or the entire want of care which would raise the

presumption of conscious indifference to consequences, rendering Defendant Hart

liable to Plaintiff for additional and punitive damages over and beyond their actual

damages pursuant to O.C.G.A. § 51-12-5.1.

77.

Because Defendant Hart acted with specific intent to cause Plaintiff harm, there is no limitation regarding the amount that may be awarded as punitive damages.

78.

Defendant Hart's actions were in bad faith and have caused Plaintiff unnecessary trouble and expense so as to enable her to recover his expenses of litigation, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## COUNT VI – DEFENDANT WELLSTAR
## NEGLIGENT RETENTION IN VIOLATION OF GEORGIA LAW

79.

Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 78 of the Complaint as if fully set forth herein.

80.

Prior to the time Plaintiff suffered the injuries complained of herein, Defendant Wellstar knew, or should have reasonably known, that numerous high level Wellstar representatives, including, but not limited to, Defendant Hart, were engaging in sexual relationships with subordinate employees in exchange for favorable treatment and thus tortiously interfering with those employees'

752036.1

employment relationships when they did not acquiesce to those representatives'
desire to engage in sexual relationships.

81.

Defendant Wellstar retained these high level representatives, including
Defendant Hart, despite its knowledge that these representatives had a propensity
to tortiously interfere with subordinate employees' employment contracts and/or
relationships when they did not acquiesce to those representatives' desires to
engage in sexual relationships.

82.

Plaintiff is entitled to the relief set forth in the prayer for relief for below.

**COUNT VII – DEFENDANT WELLSTAR**
**BREACH OF CONTRACT IN VIOLATION OF GEORGIA LAW**

83.

Plaintiff incorporates herein by reference the allegations set forth in
paragraphs 1 through 82 of the Complaint as if fully set forth herein.

84.

The Employment Agreement between Plaintiff and Defendant Wellstar
required that Wellstar "use its best efforts to take into account the input of
[Plaintiff] in developing an on-call schedule.

85.

Defendant Wellstar breached the Employment Agreement when, over the course of Plaintiff's eight (8) year tenure as a Wellstar physician, it repeatedly failed and refused to use its best efforts to take into account Plaintiff's input in developing her on-call schedule.

86.

The Employment Agreement between Plaintiff and Defendant Wellstar provided that Plaintiff "shall be entitled to  (a) a total of twenty (20) paid days each year for vacation and sick leave . . . . ."

87.

Defendant Wellstar breached the Employment Agreement when, over the course of Plaintiff's eight (8) year tenure as a Wellstar physician, it repeatedly failed and refused to provide Plaintiff with the vacation and sick time due to her.

88.

The Employment Agreement between Plaintiff and Defendant Wellstar required that Wellstar "provide [Plaintiff] with professional office space at no cost to [Plaintiff], which [Plaintiff] may use for the performance of her duties hereunder."

89.

Defendant Wellstar breached the Employment Agreement when it on several occasions failed and refused to provide Plaintiff with office space as required.

90.

The above-detailed breaches of contact have damaged Plaintiff in an amount to be established by a jury at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court:

1. Issue a declaratory judgment that Defendant Wellstar's acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured under the Family Medical Leave Act;

2. Issue a declaratory judgment that Defendant Wellstar's acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.;

3. Grant Plaintiff a permanent injunction enjoining Defendant Wellstar, its officers, agents, successors, employees, attorneys, and those acting in concert with it, from engaging in any employment practice or policy which

752036.1

discriminates against the Plaintiff and others similarly situated because of their protected activities or because of their participation in this lawsuit;

4. Order Defendant Wellstar to make whole Plaintiff by providing her back pay, reinstatement to the position she would have received but for the illegal discrimination, reimbursement for lost pension benefits, insurance benefits, medical and dental expenses incurred, social security, experience, training, lost professional status, and other benefits and expenses resulting from Defendant Wellstar's violations of Title VII, its interference with Plaintiff's FMLA rights and its retaliation for Plaintiff's having exercised her rights under Title VII and under the FMLA, in an amount to be proved at trial;

5. Grant to Plaintiff liquidated damages in an amount equal to the amount of lost income; and

6. Grant to Plaintiff a jury trial on all issues so triable;

7. Grant to Plaintiff the costs in this action and expenses of litigation, including reasonable attorneys' fees; and

8. Grant such additional relief as the Court deems proper and just.

Respectfully submitted this 4th day of May, 2010.

<u>/s/    *Von A. DuBose*</u>
Edward B. Krugman
Georgia Bar No. 429927
Von A. DuBose
Georgia Bar No. 231451
Mary W. Pyrdum
Georgia Bar No. 940420
krugman@bmelaw.com
dubose@bmelaw.com
pyrdum@bmelaw.com

Bondurant, Mixson & Elmore, LLP
1201 West Peachtree Street, NE
3900 One Atlantic Center
Atlanta, GA  30309
Telephone:  (404) 881-4110
Fax:  (404) 881-4111                    Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2010, I caused the within and foregoing

FIRST AMENDED COMPLAINT to be filed electronically with the Clerk of the

Court using the CM/ECF system, which will automatically send notification of

such filing to all attorneys of record:

> Janet E. Hill
> Hill & Associates, PC
> 1160 S. Milledge Avenue, Suite 140
> Athens, GA  30605

> And to all parties of record via service of process:

> Wellstar Health System, Inc.
> c/o Bonnie Wilson, Registered Agent
> 805 Sandy Plains Road
> Marietta, GA  30066

> Dr. Richard Hart
> 445 Cullingworth Drive
> Alpharetta, Georgia 30022

*/s/ Von A. DuBose*
Von A. DuBose
Georgia Bar No. 231451

752036.1